Matter of McDermott v Gardner (2023 NY Slip Op 02159)

Matter of McDermott v Gardner

2023 NY Slip Op 02159

Decided on April 27, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 27, 2023

535571
[*1]In the Matter of Thomas G. McDermott, Petitioner,
v
Colleen C. Gardner, as Executive Deputy Comptroller, Respondent.

Calendar Date:March 30, 2023

Before:Garry, P.J., Lynch, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Law Office of John F. Clennan Esq., Ronkonkoma (John F. Clennan of counsel), for petitioner.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.

McShan, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Comptroller denying petitioner's application for accidental disability retirement benefits.
In 2017, petitioner, a police officer, filed an application for accidental disability retirement benefits, claiming that he was permanently disabled as a result of injuries he sustained on December 23, 2006 when, while investigating a report of a gunshot, he slipped while descending stairs attached to a deck that ran along the back of a residence. The application was initially denied upon the ground that the incident did not constitute an accident within the meaning of the Retirement and Social Security Law, and petitioner requested a hearing and a redetermination. Following a hearing, the Hearing Officer upheld the denial, finding, among other things, that the incident occurred in the context of petitioner's ordinary employment duties and the resulting injuries were a product of a risk inherent in the performance of those duties. The Comptroller upheld the Hearing Officer's determination and this CPLR article 78 proceeding ensued.
We confirm. "As an applicant for accidental disability retirement benefits, petitioner bears the burden of demonstrating that his disability arose out of an accident as defined by the Retirement and Social Security Law, and the Comptroller's determination in that regard will be upheld if supported by substantial evidence" (Matter of Young v DiNapoli, 208 AD3d 1411, 1411 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Rizzo v DiNapoli, 201 AD3d 1098, 1099 [3d Dept 2022], affd 39 NY3d 991 [2022]). "For purposes of the Retirement and Social Security Law, an accident is defined as a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Margolies v DiNapoli, 210 AD3d 1245, 1246 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Lichtenstein v Board of Trustees of Police Pension Fund of City of N.Y., Art. II, 57 NY2d 1010, 1012 [1982]). To be entitled to accidental disability retirement benefits, a petitioner must "demonstrate that [his or her] injuries were caused by sudden, unexpected events that were not risks inherent in [his or her] ordinary job duties" (Matter of Kelly v DiNapoli, 30 NY3d 674, 678 [2018]). "Stated simply, to establish that injuries were due to an accident in this context, a petitioner must prove that the precipitating event was sudden, unexpected and not a risk of the work ordinarily performed" (Matter of Stancarone v DiNapoli, 161 AD3d 144, 147 [3d Dept 2018] [citation omitted]).
Petitioner testified that, on the day in question, he was working the 3:00 to 11:00 p.m. shift. At approximately 6:30 p.m., petitioner responded to a report of a gunshot at a residence. Upon entering the residence, petitioner and fellow police officers conducted a search and [*2]found a dead body with a gunshot wound in a bedroom. After securing the scene, petitioner exited the residence through a back door that opened onto a wooden deck.[FN1] Petitioner testified that it was dark out at that time and, although there was an outside light by the door, it was small and did not provide much illumination. According to petitioner, he could see an opening in the deck's railing that contained a set of stairs leading to the back lawn. Petitioner further testified that the stairs were not illuminated by the outdoor light and, although he checked the stairs before he began to descend, it was too dark for him to observe that there was a pile of wet leaves on the first stair. As he stepped down on the first stair, his foot slipped on the wet leaves, resulting in injuries to his left knee and leg.
"Police officers are frequently injured due to hazards they encounter while traversing in dark and dangerous conditions; these circumstances are generally not deemed to be accidents . . . as they are considered inherent risks of the work, although they may be unusual" (Matter of Compagnone v DiNapoli, 213 AD3d 7, 12 [3d Dept 2023] [citation omitted]). Inasmuch as petitioner's regular employment duties included investigating potential crime scenes in the dark, "the risk that he might fall due to an unseen condition while engaged in such activity is an inherent risk of that employment" (id.). Accordingly, we conclude that substantial evidence supports the Comptroller's finding that the incident does not constitute an accident within the meaning of the Retirement and Social Security Law (see id.; Matter of Valente v New York State Comptroller, 205 AD3d 1295, 1296 [3d Dept 2022]; Matter of Parry v New York State Comptroller, 187 AD3d 1303, 1305 [3d Dept 2020]). In view of the foregoing, we need not address petitioner's challenge to that part of the Comptroller's determination finding that the precipitating event was sudden and unexpected (see Matter of Valente v New York State Comptroller, 205 AD3d at 1296).
Garry, P.J., Lynch, Pritzker and Reynolds Fitzgerald, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: Petitioner testified that he exited out of the back door because the victim's family was congregating at the front of the residence and he wanted "to preserve the integrity of the investigation."